IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GARY SCHOR, a Florida resident, on behalf and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES, an Illinois corporation,<br><br>Defendant. | ) | No. 05 C 1592<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gary Schor filed a three-count class action complaint against defendant Abbott Laboratories ("Abbott"), alleging violations of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. § 2, and the Illinois Consumer Fraud Act, 815 ILCS 505/1, et seq. Plaintiff also asserts a state law claim for unjust enrichment. Plaintiff alleges that defendant used its monopoly over its patented AIDS drug Norvir to unreasonably inflate the price of competitors' drug combinations that contain Norvir.

Subject matter jurisdiction of the Sherman Act claim is based on 28 U.S.C. §§ 1331 and 1337, and 15 U.S.C. § 15. Jurisdiction over the state law claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Defendant has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons discussed below, the court grants defendant's motion to dismiss Count I, and declines to exercise supplemental jurisdiction over the state law claims.

## FACTS[1]

Defendant Abbott, an Illinois corporation, is a pharmaceutical company engaged in the business of manufacturing, developing, and distributing anti-retroviral drugs worldwide, including throughout the United States. Plaintiff, a citizen of Florida, purchased one of defendant's AIDS drugs, Norvir, for his personal use.

Norvir was originally marketed as a stand-alone protease inhibitor ("PI"). PIs are anti-retroviral drugs that inhibit the AIDS virus from copying itself into new cells. Plaintiff alleges that Norvir cannot be interchanged with any other drug, and therefore constitutes a product market subject to antitrust laws. Through various patents, defendant controls 100% of the Norvir market, and there are no generic versions of Norvir. Norvir causes severe side effects when used alone, but when taken in conjunction with other PIs, it boosts the effectiveness of the other drugs. These "boosted PIs" also remain effective for longer periods of time. It is important for AIDS patients to have a variety of PIs available to them because patients may build a tolerance to certain drug combinations.

Defendant produces its own boosted PI, called Kaletra, which is boosted by Norvir. At least seven other boosted PIs, not manufactured by defendant, are boosted by Norvir: Agenerase, Crixivan, Fortovase, Invirase, Lexiva, Reyataz, and Viracept. Plaintiff alleges that PIs boosted by Norvir are not interchangeable with any other drugs and are a market subject to antitrust laws. Plaintiff asserts that defendant effectively controls this market for "all of the anti-retroviral drugs

---

[1]For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

dependent on a boost from Norvir in the United States," and that the United States is a proper geographical market for antitrust purposes.

Kaletra, defendant's boosted PI, began to lose its market share in 2003. In December 2003, defendant raised the price of Norvir by more than 400%. Defendant did not, however, pass this price increase on to Kaletra. As a result, Kaletra costs substantially less than other boosted PIs. Plaintiff asserts that defendant's "anticompetitive pricing scheme is designed to exclude competition for Kaletra, even though Kaletra might not be the most effective PI for a particular patient." Prior to the increase, it was projected that defendant would receive over $2 billion in revenues for Norvir. According to plaintiff, defendant "had no legitimate justification for the exorbitant price increase of Norvir other than to strangle the market to the detriment of AIDS victims."

## DISCUSSION

In ruling on a motion to dismiss for failure to state a claim, the court accepts the allegations of the complaint as true and views the facts in the light most favorable to the plaintiff. Travel All Over the World, 73 F.3d at 1428. A complaint should not be dismissed for failure to state a claim unless there is no doubt that the plaintiff cannot prove a set of facts that would entitled her to relief based on her claim. Pressalite Corp. v. Matsushita Electric Corp. of America, 2003 WL 1811530, at *2 (N.D. Ill. Apr. 4, 2003).

### I. Collateral estoppel

Plaintiff argues in his response to the motion to dismiss that defendant is collaterally estopped from raising its arguments in favor of its motion to dismiss by two earlier decisions issued by Judge Wilken of the Northern District of California, Doe v. Abbott Laboratories, C 04-

1511 CW, unpub. order (N.D. Cal. Oct. 21, 2004), and Service Employees International Union Health and Welfare Fund v. Abbott Laboratories, 2005 WL 528323 (N.D. Cal. Mar. 2, 2005). Like the instant case, Doe and Service Employees are class actions against defendant brought by indirect consumers of Norvir. The Doe and Service Employees plaintiffs allege violations of the Sherman Act, as well as violations of the California Business and Professions Code and state law unjust enrichment claims. Judge Wilken denied the defendant's motions to dismiss in both cases, which remain pending.

In the instant case, defendant argues that collateral estoppel does not apply because a ruling on a motion to dismiss is not a "final judgment," and thus does not trigger collateral estoppel.[2] Collateral estoppel, or issue preclusion, bars the litigation in a subsequent action of an issue that has been decided in a prior action. Meyer v. Rigdon, 36 F.3d 1375, 1378 n. 1 (7th Cir. 1994). The Seventh Circuit has held that the party invoking collateral estoppel has the burden of proving four elements: (1) that the issue sought to be precluded is identical to the issue raised in the prior action; (2) that the issue was actually litigated; (3) that determination of the issue was essential to the final judgment; and (4) that the party against whom estoppel is invoked was fully represented in the prior action. Id. The party asserting estoppel has the burden of establishing

[2]Defendant also argues that collateral estoppel does not apply because the California court "did not address 'identical' issues" to those presented in the instant case. In its joinder motion filed with the Judicial Panel on Multi-District Litigation ("MDL"), however, defendant asserts that the instant case and Doe and Service Employees "are based on identical facts and allege identical legal theories." Judicial estoppel prevents a party that has taken one position in litigating a particular set of facts from later reversing its position when it is to its advantage to do so, if the party to be estopped has convinced the court to adopt its position. Levinson v. United States, 969 F.2d 260, 264 (7th Cir. 1992). Although at this point judicial estoppel does not strictly apply because the MDL has not ruled on the joinder and transfer motion, the court notes that defendant's positions regarding identical facts appear clearly inconsistent. Id.

which issues were actually determined in his favor in a prior action. Gilldorn Savings Ass'n. v. Commerce Savings Ass'n., 804 F.2d 390, 393 (7th Cir. 1986).

Although defendant is correct that a ruling denying a motion to dismiss is typically not a final judgment for the purposes of collateral estoppel, the Seventh Circuit has held that there are instances in which a motion to dismiss ruling may have preclusive effect. For example, the Gilldorn court held that a district court's denial of a motion to dismiss was sufficiently final for purposes of collateral estoppel. Id. In Gilldorn, an Illinois district court judge granted the plaintiff's motion to enjoin a pending action brought by the defendant in Texas, based on the plaintiff's argument that the Texas action should have been brought as a compulsory counterclaim in the Illinois action. The plaintiff, however, had already moved for dismissal in the Texas action, and had made the compulsory counterclaim argument, along with others, unsuccessfully. Id. at 391. The Seventh Circuit held that the Illinois district court should have given collateral estoppel effect to the Texas district court's denial of the plaintiff's dismissal motion. Id. at 395.

In support of its holding that a denial of a motion to dismiss may, in some cases, operate as collateral estoppel, the Gilldorn court cited the Seventh Circuit's earlier holding in Miller Brewing Co. v. Joseph Schlitz Brewing Co., 605 F.2d 990 (7th Cir. 1979), cert. denied, 444 U.S. 1102 (1980). To determine whether a decision is "final" for collateral estoppel purposes, the Miller court instructed courts to consider whether: (1) the decision was not "avowedly tentative"; (2) the hearing was adequate and the parties were fully heard; (3) the court supported its decision with a reasoned opinion; and (4) the decision was appealable or had been appealed. 605 F.2d at 996. The ultimate question, then, is whether the "'prior adjudication...is determined to be

sufficiently firm to be accorded conclusive effect.'" Id. (quoting Restatement (Second) of Judgments § 41 comment G (Tent. Draft No. 1 1973)); see also In re Bridgestone/Firestone Inc., 333 F.3d 763, 767 (7th Cir. 2003) ("[F]or the purposes of issue preclusion (as distinguished from merger and bar), 'final judgement' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.").

Judge Wilken's findings regarding the California plaintiffs' Sherman Act claims do not have collateral estoppel effect in the instant case.[3] First, most of the "holdings" listed by plaintiff in its brief are not in fact holdings. The plaintiffs in Doe and Service Employees, like plaintiff in the instant case, rely on a "monopoly leveraging theory" of antitrust liability. Although the Ninth Circuit applied this theory to a patentee in Image Technical Services, Inc. v. Eastman Kodak, Co., 125 F.3d 1195 (9th Cir. 1997), cert. denied, 523 U.S. 1094 (1998), there is a circuit split on this question, as discussed below, and Ninth Circuit case law is not binding on this court. More damaging to plaintiff's collateral estoppel argument, Judge Wilken did not hold that defendant was liable under this theory, but only that the plaintiffs in those cases had alleged sufficient facts to survive the motions to dismiss. Doe at 6; Service Employees, 2005 WL 528323, at *3. Similarly, the California court did not issue a final judgment or appealable ruling on the question of defendant's monopoly power in the boosted PI market, but held only that under Ninth Circuit law the plaintiffs had sufficiently pled all of the essential elements of their Sherman Act claims. Id. Such non-final holdings cannot collaterally estop defendant from advancing similar arguments here.

---

[3]Although the court does not reach plaintiff's state law claims, it is clear that Judge Wilken's rulings on the California plaintiffs' state law claims, brought under California law, do not have a collateral estoppel effect on a court applying Illinois law.

Second, although Judge Wilken held that the plaintiffs in Doe and Service Employees had standing as indirect consumers of Norvir to pursue their Sherman Act claims, the Seventh Circuit has held that the "denial of a motion to dismiss for lack of standing does not qualify as a final judgment." Triad Assocs., Inc. v. Robinson, 10 F.3d 492, 496 n. 2 (7th Cir. 1993)(citing Cymes v. DeKalb County, Ga., 923 F.2d 1482, 1484-1485 (11th Cir. 1991); see also Carter v. Signode Industries, Inc., 1988 WL 130619, at *1 (N.D. Ill. Dec. 1, 1988)(noting that denial of motion to dismiss for lack of standing, absent certification of interlocutory appeal under 28 U.S.C. § 1292(b), is "otherwise unappealable"). Because the denial of the motions to dismiss Doe and Service Employees for lack of standing were not final orders and thus not appealable, they do not have collateral estoppel effect on defendant's arguments in support of its motion to dismiss in the instant case.

## II. Sherman Act

Count I of plaintiff's complaint alleges that defendant violated § 2 of the Sherman Act by abusing its monopoly power in the U.S. market for Norvir, its patented product, to unfairly injure competition in the market for PIs boosted by Norvir.[4] Defendant's own boosted PI, Kaletra, competes in this second market with approximately seven other PIs boosted by Norvir. Defendant argues that Count I should be dismissed because its patents for Norvir, which cover its use as a stand-alone drug and as a booster when combined with other PIs, preclude antitrust liability. Defendant also argues that plaintiff fails to sufficiently allege defendant's market power

[4]Section 2 of the Sherman Act, 15 U.S.C. § 2, prohibits monopolization or attempts to monopolize: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony..."

in the boosted PI market, and that plaintiff lacks standing to obtain relief under the Sherman Act because he is an indirect consumer and has failed to allege that he suffered any antitrust injuries.[5]

The instant case reveals the tension between antitrust laws, which discourage monopolies, and patent laws, which protect monopolies. See Image Technical Servs., Inc. v. Eastman Kodak Co., 125 F.3d 1195, 1217 (9th Cir. 1997)("At the border of intellectual property monopolies and antritrust markets lies a field of dissonance yet to be harmonized by statute or the Supreme Court."); Sheet Metal Duct, Inc. v. Lindab, Inc., 2000 WL 987865, at *2 (E.D. Pa. July 18, 2000)("patent and antitrust laws exist in tension, as the patent laws protect monopoly power, while antitrust laws seek to restrain it"); see also Patrick H. Moran, Comment, The Federal and Ninth Circuits Square Off: Refusals to Deal - the Precarious Intersection Between Antitrust and Patent Law, 87 MARQ. L. REV. 387, 387 (2003)("Although both the patent and antitrust laws were designed to stimulate the economy and benefit consumers, a fundamental tension between the two has always existed."). One consequence of the overlap between the patent and antitrust statutes and case law is that there is no easy delineation between a patent holder's permissible exercise of its rights under patent law, which grants a government-sanctioned monopoly and expressly allows the patentee to engage in exclusionary conduct, and anticompetitive behavior that violates antitrust law, which proscribes exclusionary conduct when coupled with monopoly power.

Although not a model of clarity in antitrust pleading, plaintiff's complaint alleges two separate markets: the Norvir market and the market of PIs boosted by Norvir. Plaintiff clarifies

---

[5]In plaintiff's response to the motion to dismiss, he withdraws his claims for damages under Count I of his complaint, and now seeks only injunctive relief.

in his response to the motion to dismiss that he does not dispute the validity of the Norvir patents or defendant's lawful monopoly in the Norvir market. Instead, he is challenging defendant's use of its monopoly of the Norvir market to attain a monopoly in the boosted PI market. Plaintiff's Sherman Act claim is premised on an extension of the monopoly leveraging theory to patent holders, under which antitrust liability may be based on the improper use of a monopoly in one market to strengthen or create a monopoly in another market. Virgin Atlantic Airways Ltd. v. British Airways PLC, 257 F.3d 256, 272 (2nd Cir. 2001); Alaska Airlines, Inc. v. United Airlines, Inc, 948 F.2d 536, 547 (9th Cir. 1991). To establish a § 2 Sherman Act violation based on monopoly leveraging, a plaintiff must prove that the monopolist: (1) possesses monopoly power in the primary relevant market; (2) gained or attempted to gain a monopoly power in a second relevant market; and (3) willfully acquired the monopoly power by some exclusionary conduct and not through efficiency and innovation." Alaska Airlines, 948 F.2d at 547.

The Supreme Court emphasized in Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 415 n. 4 (2004), that a monopoly leveraging claim "presupposes anticompetitive conduct." It is well established that not all conduct that hurts competitors is anticompetitive or a violation of the antitrust laws. See, e.g., Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458 (1993)("The [Sherman Act] directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself."); Endsley v. City of Chicago, 230 F.3d 276, 283 (7th Cir. 2000) ("Under § 2, intent to obtain a monopoly is unlawful only where an entity seeks to maintain or achieve monopoly power by anticompetitive means."); Intergraph Corp. v. Intel Corp., 195 F.3d 1346, 1363 (Fed. Cir. 1999)("Precedent makes clear that a customer who is dependent on a

manufacturer's supply of a component cannot on that ground force the producer to provide it; there must also be an anticompetitive aspect invoking the Sherman Act [to warrant imposition of antitrust liability.]"). To state a claim for a Sherman Act violation, a plaintiff must allege conduct that hurts competition in the relevant market. Endsley, 230 F.3d at 284 (affirming dismissal of plaintiff's antitrust claim because plaintiff failed to identify "any facts which point to the [defendant's] alleged anti-competitive use of its power to control the price").

There is sparse case law regarding if or how the monopoly leveraging theory applies to conduct by a patentee, and what little case law there is does not concern a price increase by a patent holder. In the instant case, both parties cite to opinions addressing whether a patentee's refusal to deal – to license or sell its patented product – is a violation of antitrust law. The court agrees with the parties' implicit assumption that it is appropriate to analogize refusal to deal cases with the price increase at issue here because if a patentee has the right to refuse to sell its product altogether, it has the right to raise the price. See Zenith Laboratories, Inc. v. Carter-Wallace, Inc., 530 F.2d 508, 513 n. 9 (3rd Cir. 1976)("a patentee is privileged to withhold [its invention] from sale at any price, or to offer it for sale at any price he wishes, low or high")(citing 6A CORBIN, CONTRACTS § 1410 at 246 (1962)). Applying the refusal to deal case law to the instant case, however, is no easy task. There is no Supreme Court precedent, and a split exists between the Ninth and Federal Circuits regarding whether the monopoly leveraging theory may be applied to patent holders. Thus, this is a case of first impression in the Seventh Circuit whether a patent holder may be liable under the monopoly leveraging theory, and whether the Sherman Act limits a patentee's right to exclude others from more than one relevant market.

The Ninth Circuit was the first court to examine the antitrust liability of a patent holder under the monopoly leveraging theory. Sharon Brawner McCullen, Comment, The Federal Circuit and Ninth Circuit Face-Off: Does A Patent Holder Violate the Sherman Act By Unilaterally Excluding Others From A Patented Invention In More Than One Relevant Market?, 74 TEMP. L. REV.469, 500 (2001). In Image Technical Services, Inc. v. Eastman Kodak, Co., 125 F.3d 1195 (9th 1997), cert. denied, 523 U.S. 1094 (1998) ("Kodak II"), the court held that patent rights do not immunize a patent holder to antitrust violations based on monopoly leveraging, and that a patent holder may be liable under the monopoly leveraging theory for using its monopoly over a patented product to affect a secondary market. The plaintiffs in Kodak II were a group of independent service organizations (ISOs) who alleged Sherman Act violations after Kodak refused to sell replacement parts, many of which were patented, to the ISOs, who serviced and repaired Kodak photocopier equipment.

In Kodak II the Ninth Circuit extended earlier monopoly leveraging precedent to antitrust cases involving patented products, and limited a patent holder's right to exclude others to a single market. Id. at 1217-18. Kodak II held that Kodak violated § 2 of the Sherman Act when it refused to sell its patented parts for use by independent service organization in the secondary service market. In support of its finding, the Kodak II court relied in part on a footnote in the Supreme Court's opinion affirming the Ninth Circuit's earlier denial of summary judgment. Id. at 1215-16. Addressing the plaintiffs' § 2 monopolization claim, the Court rejected the argument that a manufacturer competing in the secondary service market enjoys per se immunity to antitrust laws. Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 479 n. 29 (1992)("Kodak I"). The Court noted that it "has held many times that power gained through

some natural and legal advantage such as a patent, copyright, or business acumen can give rise to liability if 'a seller exploits his dominant position in one market to expand his empire into the next.'" Id.

Three years later, and faced with a very similar factual situation to Kodak II, the Federal Circuit expressly rejected the Ninth Circuit's reasoning, and held that a patent holder does not violate the Sherman Act by refusing to license or sell a patented item in a second market, even when the patented product is necessary to the second market. In re Independent Service Organizations Antitrust Litigation CSU, L.L.C., v. Xerox, 203 F.3d 1322 (Fed. Cir. 2000), cert. denied, 531 U.S. 1143 (2001)("Xerox"). The Xerox plaintiffs, ISO competitors in the photocopier service market, sued Xerox over its refusal to sell its patented replacement parts and other copyrighted materials to ISOs unless they were also end-users of Xerox copiers. Id. at 1324. Affirming the district court's grant of summary judgment to the defendant, the Federal Circuit held that absent "illegal tying, fraud in the Patent and Trademark Office, or sham litigation," a patentee may enforce its statutory rights "free from liability under the antitrust law." Id. at 1327-28. Contrary to the Ninth Circuit, the Federal Circuit also held that a patent holder's right to exclude extends to any relevant market that involves the use, manufacture or sale of the invention. Id. at 1325-26.

Defendant in the instant case incorrectly argues that Xerox is binding precedent because the instant case involves patents, and therefore the law of the Federal Circuit, rather than Seventh or Ninth Circuit law, controls. See In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803 (Fed. Cir. 2000)(Federal Circuit law applies to issues of substantive patent law). The Supreme Court, however, has significantly curtailed the Federal Circuit's jurisdiction over antitrust claims,

which had expanded during the 1990s. In Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc., 535 U.S. 826, 829-830 (2002), the Court held that 28 U.S.C. § 1338, the congressional grant of jurisdiction to the Federal Circuit, requires that the plaintiff's complaint "creates the cause of action." In the instant case, defendant cites Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc., 375 F.3d 1341, 1355 (Fed. Cir. 2004), in support of its argument that Federal Circuit precedent controls, but Unitherm is inapposite. The plaintiffs in Unitherm sought a declaration of patent invalidity, in addition to asserting monopolization and tortuous interference claims. Id. In contrast, plaintiff in the instant case has disavowed any patent claims, and patent law does not create the cause of action. Federal Circuit law may nevertheless control the instant case, however, because, as discussed below, the scope of the patent is an issue.

Regardless of which circuit's law must control, for the reasons discussed below the court finds the Xerox court's reasoning persuasive, and that the holding represents a sounder approach to a patentee's antitrust liability in a second market than the Ninth Circuit's opinion in Kodak II. The court agrees with the Federal Circuit that subject to narrow limitations, not at issue in the instant case, a patentee's exercise of its statutorily-granted market power does not constitute a Sherman Act violation, even if such conduct affects a second market. The Federal Circuit's decision is in keeping with the case law and the statutory language suggesting that a court must consider the scope of the patent grant when determining whether an antitrust violation has occurred, and properly holds that a patentee is not liable for conduct within the scope of its valid patent grant.

A patent holder may, of course, violate the Sherman Act by excluding others from inventions beyond the scope of the patent. Ethyl Gasoline Corp. v. United States, 309 U.S. 436,

457-58 (1940). For example, the Supreme Court has held that a patent holder exceeded the scope of its patent by conditioning a license agreement on the licensee's use of the protected invention with products not included in the patent grant, Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 512 (1917), on royalty payments for products not within the scope of the patented invention, Zenith Radio Corp. v. Hazeltine Research, Inc, 395 U.S. 100, 135-36 (1969), or on the purchase, use or sale of other products, Ethyl Gasoline, 309 U.S. at 447-48. As these cases indicate, the Supreme Court carefully distinguishes between the unlawful enlargement of a patent and a patentee's lawful exercise of the right to sell others the invention within the scope of the patent. See, e.g., Ethyl Gasoline, 309 U.S. at 457-58 ("The picture here revealed is not that of a patentee exercising its right to refuse to sell or to permit his licensee to sell the patented product."). The Supreme Court case law suggests that the Sherman Act does not limit the patent holder's right to exclude others from the protected invention to a single market, but rather that the right is coextensive with the scope of the patent grant. Thus, patent law extends to protect a patent holder from antitrust liability in a second market that is encompassed by the patent claims.

The court agrees with the Xerox court that footnote 29 in the Supreme Court's decision in Kodak I, which suggests that a patentee's expansion into a second market may be an antitrust violation, is largely inapposite to the facts of Kodak II and Xerox, and was incorrectly applied by the Ninth Circuit in Kodak II. As the Federal Circuit noted, Kodak I was a tying case when it came before the Supreme Court, and no patents had been asserted in defense of the antitrust claims against Kodak. Xerox, 203 F.3d at 1327. "Properly viewed within the framework of a tying case, the footnote can be interpreted as restating the undisputed premise that the patent holder cannot use his statutory right to refuse to sell patented parts to gain a monopoly in a

market *beyond the scope of the patent*. Id. (emphasis in original). The Federal Circuit recognized that a patent grant may encompass multiple markets, and held that Xerox's actions fell within the statutory patent grant. Id. at 1327.

The Federal Circuit cited section 271(d) of the Patent Act, which immunizes a patent holder against certain liabilities, in support of its expansion of a patentee's rights into a second market. Xerox, 203 F.3d at 1326. Section 271(d) states that, "No patent owner otherwise entitled to relief...shall be denied relief or deemed guilty of misuse or *illegal extension of the patent right* by reason of his having...(4) refused to license or use any rights to the patent..." 35 U.S.C. § 271(d) (emphasis added). Although § 271(d) does not explicitly refer to an antitrust violation, the Supreme Court has frequently used the language of whether a patent holder's actions have "expanded" or "enlarge[d]" the patent grant to analyze allegations of antitrust violation, implying that the phrase in § 271(d) includes antitrust violations. See McCullen, 74 TEMP. L. REV. 469, 494 (collecting cases). The court agrees with the Federal Circuit's suggestion that the statutory language of the Patent Act indicates that a patent holder is not liable for an antitrust violation for refusing sell or license a patented product within the scope of the patent grant, and that this immunity is not limited to a single market. Thus, if the product is encompassed within the patent claims, the Sherman Act does not limit the patent holder's refusal to license or sell that item, or limit the patent holder's right to charge a higher price, in any market.

Lastly, the instant case is factually distinguishable from Kodak II and Xerox in aspects that support defendant's argument that it should not be subject to antitrust liability for raising the price of Norvir. First, defendant's patents cover Norvir's use in the stand-alone market as well as

the boosted PI market. Plaintiff does not challenge defendant's assertion that its patents "explicitly cover the use of Norvir as a 'booster' in combination with another PIs." In Xerox and Kodak II, in contrast, the second market at issue was a service and repair market, which was apparently not covered by the defendants' patent grants. Here, the alleged second market is for compound products containing the first market's product, and plaintiff does not argue that defendant's use of Norvir in Kaletra or its sale of Norvir as a booster for competitors' boosted PIs exceeds the patent grant. Unlike Xerox and Kodak II, defendant's Norvir patents apply in both markets to cover Norvir's use in conjunction with drugs manufactured and sold by third parties.

Second, in Xerox the Federal Circuit determined that the defendant's refusal to deal was within the scope of its patent claims and thus permissible. 203 F.3d at 1327-28. In the instant case, defendant has taken a less drastic measure than the defendants in Kodak II and Xerox, because it has not instituted a unilateral refusal to deal, which would prevent customers or a group of customers from obtaining its product. Plaintiff does not allege that Norvir or any of the boosted PIs that depend on Norvir are unavailable, but only that they are significantly more expensive. The court is not unsympathetic to plaintiff's seemingly legitimate concerns that the drastic price increase will prevent him and other AIDS patients from receiving the best drug treatments for their disease, but antitrust laws do not impose liability for a business entity's failure to act morally or in the public interest.

To accept plaintiff's argument would seem to impose antitrust liability on any manufacturer who holds patents for a product when used alone as well as for its use as a component in products manufactured by the patentee and competitors, and raises the price it

charges competitors for its patented component. Such a result runs contrary to the aims of the antitrust and patent laws to encourage innovation and competition, and is not supported by the case law. The Supreme Court has held that the Sherman Act was enacted to prevent restraint of commerce, but has explicitly recognized the patent grant as an exception. United States v. Line Material Co., 333 U.S. 287, 309 (1948). The court is not persuaded by plaintiff's arguments in the instant case, or by the Ninth Circuit's reasoning in Kodak II, that a patentee's right to exclude others, including by raising prices, is limited to the primary market only, particularly when, as here, it is not disputed that the use of the patented invention in second market is within the scope of the patent claims.

For the reasons stated above, defendant may not be held liable for a violation of § 2 of the Sherman Act for increasing the price of its patented product, even though that price increase may affect competition in a second market. Accordingly, the court grants defendant's motion to dismiss Count I with prejudice.

Because the court grants defendant's motion to dismiss Count I, it need not reach defendant's alternative arguments that plaintiff failed to allege market power or that plaintiff lacks standing as an indirect consumer to pursue injunctive relief. In addition, the court declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, the court grants defendant's motion to dismiss Counts II and III without prejudice.

## CONCLUSION

For the reasons stated above, the court grants defendant's motion to dismiss the complaint. Count I is dismissed with prejudice. Counts II and III are dismissed without prejudice.

**ENTER: July 12, 2005**

**Robert W. Gettleman**
**United States District Judge**